

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
JUDGE

LETTER OPINION

April 9th, 2012

Tracey Ellen Cahn
Law Offices of Barbara B. Comerford, P.A.
6 Prospect Street, Suite 2B
Midland Park, NJ 07432
(*Attorney for Plaintiff*)

Maria Pia Fragassi-Santagelo
Office of the U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
(*Attorney for Commissioner of Social Security*)

RE: *Cartagena v. Comm'r of Soc. Sec.*
    Civil Action No. 2:10-cv-05712-WJM

Dear Counsel:

Petitioner Roberto Cartagena brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). There was no oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

I.      **Standard of Review and the Social Security Legal Framework**

This Court has plenary review of the Administrative Law Judge's ("ALJ") application of the law. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d

1

429, 431 (3d Cir. 1999). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing 42 U.S. § 405(g)).

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires at Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits and the analysis ends; if not, the ALJ moves on to Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At Step Four, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Commissioner to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

II.   **Factual and Procedural Background**

Mr. Cartagena applied for a period of disability, DIB, and SSI on February 10, 2006. In his applications, Mr. Cartagena claimed that he is entitled to DIB and SSI beginning December 14, 2002 because of his diabetes. His claim was initially denied on August 12, 2006 and again upon reconsideration on June 8, 2007. Mr. Cartagena then filed a written request for an ALJ hearing on June 18, 2007. That hearing took place on October 24, 2008 in Newark, New Jersey.

At the hearing, Mr. Cartagena claimed additional impairments, not part of his original applications, including hypertension, lower back pain, wrist fractures, depression, and possible substance abuse. After consulting the record and Mr. Cartagena's testimony, the ALJ ultimately determined that Mr. Cartagena was not disabled. The ALJ recognized that Mr. Cartagena had certain impairments, but also found that he had the residual functional capacity ("RFC") to perform light work activity limited to simple, routine, repetitive job tasks in a low stress work environment with certain other social and environmental limitations. The Appeal's

2

Council denied Mr. Cartagena's request for review on September 8, 2010, after which he filed this appeal.

Mr. Cartagena claims that the ALJ's findings regarding his RFC as explained in the June 2, 2009 decision are not supported by substantial evidence for several reasons discussed below. Mr. Cartagena raises no other issues concerning any of the ALJ's other findings.

### III. Legal Analysis

**A.**  The ALJ's Development of the Record in Light of Mr. Cartagena's Pro Se Designation Was Not Erroneous.

Mr. Cartagena alleges that the ALJ failed to develop the record to the extent required when a claimant appears *pro se*. This argument is without merit.[1]

Where a claimant appears unrepresented, the ALJ has a duty to exercise "a heightened level of care" and "assume a more active role" developing the record. *Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981); *Livingston v. Califano*, 614 F.2d 342, 344 (3d Cir. 1980). The Third Circuit "does not prescribe any particular procedures" for developing the *pro se* claimant's record, but there are several accepted steps the ALJ may take to fulfill this duty. *See e.g. Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (remanding ALJ determination due to a "wholly inadequate" record). Most importantly, the ALJ should insure that the claimant presents a complete medical history as required by statute. *See* 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history . . . ."); *Money v. Barnhart*, 91 F. App'x 210 (3d Cir. 2004) (finding ALJ evaluated enough records to meet standard for a complete medical history); *Reefer* 326 F.3d at 376 (finding ALJ could have met duty by requesting additional medical records). To complete the medical history, the ALJ should also solicit testimony from the claimant at the hearing. *See Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999) (finding ALJ could have met duty to investigate by soliciting more testimony from claimant); *Moran v. Astrue*, 569 F.3d 108, 114 (2d Cir. 2009) (noting it was "especially important" for the ALJ

---

[1] Mr. Cartagena also suggests that the ALJ did not designate him as a *pro se* claimant to begin with, yet this is clearly false. The ALJ began the hearing by clarifying Mr. Cartagena's right to attorney representation. (Tr. 31.) Mr. Cartagena indicated that he understood his right and expressed his desire to have Ms. Ramos represent him. (Tr. 32.) The ALJ explained that Ms. Ramos could assist as a non-attorney representative but reminded Mr. Cartagena that "[s]he is, as she's mentioned, I just want the record to be clear, not an attorney." *Id.* The ALJ then clarified Mr. Cartagena's *pro se* designation by asking, "[a]nd you wish to proceed without an attorney?" to which Mr. Cartagena responded, "Yes." (Tr. 34.) The final opinion also reflects Mr. Cartagena's *pro se* designation. (Tr. 10.) ("Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.")

3

to help *pro se* claimant develop testimonial record). Additionally, the ALJ may leave the record open so that more medical evidence can be added after the hearing. *Sanches v. Comm'r of Soc. Sec.* 271 F. App'x 230, 233 (3d Cir. 2008) (holding ALJ met enhanced duty by leaving record open); *Mathews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001) (declining to remand where ALJ kept record open). Despite the ALJ's heightened duty, the claimant ultimately retains the burden to prove he or she is disabled. *See* 20 C.F.R. 404.1512.; *Money* 91 F. App'x 210, 215.

Mr. Cartagena asserts that the record should have been developed further concerning his tolerance for standing, walking, sitting, and using his hands. He also asserts that the ALJ should have done more to investigate his ability to concentrate and focus, given his eleventh grade education and enrollment in special education classes. Finally, Mr. Cartagena argues that the record should have been developed further regarding his vision. Yet for each of these concerns, the ALJ consulted numerous medical records, took care to solicit testimony at the hearing, and offered to leave the record open—meeting the heightened duty to develop the record required in this case.

1. Tolerance for Standing/Walking/Sitting: The ALJ consulted several medical reports and elicited direct testimony from Mr. Cartagena about his ability to stand, walk, and sit. The ALJ discussed a general medical report from Dr. Bipin Parikh, MD, which "did not indicate that claimant had any limitation in standing, walking, stooping, bending, climbing, or using his hands." (Tr. 21.) The ALJ also discussed the findings of a consultative examination by Dr. Alexander Hoffman, MD, which concluded that Mr. Cartagena "had a slow but normal gait and no difficulty getting on or off the examination table." (Tr. 14.) The ALJ also solicited testimony from Mr. Cartagena at the hearing about his ability to walk (Tr. 47.) ("what happens when, when you walk that much?").

2. Tolerance for Using Hands: The ALJ elicited direct testimony from Mr. Cartagena about his ability to work with his hands and also consulted numerous medical reports on the question. At the hearing, Mr. Cartagena explained to the ALJ that he is hampered by arthritis but can write with his right hand and squeeze them both together tolerably. (Tr. 56.) Additionally, the ALJ relied on the findings of a consultative examination by Dr. Anthony J. Candela, Ph.D., which suggested "good functioning of both wrists". The ALJ also relied on the reports from Dr. Hoffman and Dr. Parikh which found "a good result from treatment of [Mr. Cartagena's] right wrist fracture" and "no indication that [Mr. Cartagena] had any limitation . . . using his hands." (Tr. 21.)

3. Ability to Concentrate and Focus: The ALJ investigated Mr. Cartagena's ability

4

to concentrate and focus by consulting medical records, soliciting direct testimony, and keeping the record open so that additional evidence could be supplied after the hearing. The ALJ consulted Dr. Candela's report, which diagnosed "borderline lower intellectual functioning", but also found that Mr. Cartagena could "engage in the activities of daily living" and had "no organic mental disorder". (Tr. 18.) The ALJ also considered Dr. Hoffman's report, which found "no evidence of organic memory loss." Id. Additionally, the ALJ relied on an assessment from State agency consultant Dr. Ira Gash, which found that Mr. Cartagena was generally able to maintain concentration, pace, and persistence. (Tr. 22.) The ALJ also elicited direct testimony from Mr. Cartagena at the hearing. (Tr. 63, 66.) The ALJ understood that liver damage caused by diabetes can lead to problems with fatigue and concentration, so he also asked Mr. Cartagena about his liver function. (Tr. 58.) Finally, the ALJ left the record open and specifically invited additional evidence concerning Mr. Cartagena's ability to concentrate and focus. (Tr. 71.) ("I want to keep the record open and I would arrange for that diagnosis to be sent to me.")

4. Vision: The ALJ noted that Mr. Cartagena reported episodes of blurred vision to Dr. Hoffman, who found Mr. Cartagena's vision to be 20/50 bilaterally without correction. (Tr. 14.) Mr. Cartagena never mentioned vision problems in his applications or at the hearing. Though the ALJ did not take specific steps to develop this issue, he pressed Mr. Cartagena to explain any other impairments that might impact his ability to work, and Mr. Cartagena consistent failed to mention blurred vision. (Tr. 63) ("Are there other questions or areas that you think the claimant should be discussing that I'm not asking about?"); (Tr. 64.) ("Are there things you want to tell me about that I have not been asking you about?"); (Tr. 66.) ("So let me just ask you, ask you again, if there was a job available for you today . . . why is it that you wouldn't be able to do it?") The responses to these questions gave the ALJ no indication that the record might be incomplete on the question of vision, suggesting that the issue did not require additional investigation. See 20 C.F.R. § 404.1527 ("[W]hen despite efforts to obtain additional evidence the evidence is not complete, we will make a determination or decision based on the evidence we have.")

Overall, the ALJ developed a record that was complete with numerous medical reports, Mr. Cartagena was questioned thoroughly, and the record was left open so that additional evidence could be introduced later. These facts indicate that the ALJ met his duty to develop the record, even under the heightened standard that applies for a *pro se* claimant. Additionally, ALJ's passivity in developing the record will only be sufficient for remand or reversal when it has clearly prejudiced the

5

claimant, which is not apparent here. *Livingston* 614 F.2d at 345; *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969). Ultimately, Mr. Cartagena retained the burden to prove he is disabled. *See* 20 C.F.R. 404.1512.; *Money* 91 F. App'x 210, 216 (finding ALJ inquiry sufficient because "[n]othing else indicate[d] that the record lacked enough data for the ALJ to make a well-informed decision.")

B. The ALJ's Failure to Rely on Both of Mr. Cartagena's Global Assessment Functioning Scores Was Not Erroneous.

Mr. Cartagena argues that the ALJ improperly ignored a Global Assessment Functioning ("GAF") score [2] included in the record, but this argument fails because the ALJ provided adequate justification for discounting it.

When reviewing medical evidence, the ALJ may assess credibility and assign weight, but must "give some indication of the evidence that he rejects and his reason[s] for discounting that evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). GAF scores, a form of medical evidence, may be rejected or discounted under the same assessments of weight and credibility, so long as those assessments are adequately explained. *See Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011); *Smith v. Comm'r of Soc. Sec.*, No. 10-468, 2010 WL 4063347 (D.N.J. Oct. 15, 2010); *Carpenter v. Comm'r of Soc. Sec.*, No. 10-5762, 2012 WL 194384 at *4 (D.N.J. Jan. 23, 2012) (finding that ALJ did not err by ignoring GAF score because reasons for doing so were adequately explained and based on the record).

Here, the ALJ adequately explained his reasons for relying on the GAF score of 65 assigned by Dr. Candela while discounting an alternative GAF score of 40 assigned by Miriam Perez, a social worker. First, the ALJ pointed out that Ms. Perez's report was inconsistent with the rest of the record because it emphasized Mr. Cartagena's substance abuse rather than his depression. (Tr. 22.) None of the other medical reports focused on substance abuse, and the ALJ ultimately concluded that substance abuse did not result in a disabling limitation. (Tr. 19, 22.) This inconsistency was a legitimate reason for discounting the GAF score of 40. *See* 20 C.F.R. § 404.1535; *Rios* 444 F. App'x 532 at 533 (finding ALJ did not err by only using GAF score that accurately reflected claimants symptoms); *Carpenter* 2012 WL 194384 at *4. Second, the ALJ explained how the GAF score of 40 was assigned by a "nontreating source"—Ms. Perez, who had no prior history of treating Mr. Cartagena. (Tr. 22; Exhibit 12F). Since the reliability of medical

---

[2] The GAF score is a calculation endorsed by the American Psychiatric Association to quantify an individuals psychological, social, and occupational functioning on a hypothetical continuum of one to a hundred. *See* 65 FR 50746-01 at 50765.

evidence should be weighed according to history of treatment with the source, discounting the lower GAF score for this reason was also justified. *See* 20 C.F.R. § 404.1527(d)(2); *Adorno* 40 F.3d at 47; *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Also, the ALJ found that Dr. Candela's report assigning the GAF score of 65 was more consistent with the rest of the record and was supported by more medical evidence. *See* 20 C.F.R. § 404.1527; *Rios* 444 F. App'x 532 at 533 (finding no error where ALJ used GAF score that aligned with her "overall judgment"). Overall, the ALJ adequately justified the greater weight he assigned to the GAF score of 65 such that Mr. Cartagena's argument is without merit.

C. The ALJ's Failure to Comply with the Hearings, Appeals and Litigation Manual Was Not Erroneous.

Mr. Cartagena argues that the ALJ erred by failing to comply with provisions of the Hearing Appeals and Litigation Manual ("HALLEX"),[3] but this argument is meritless as well. Specifically, Mr. Cartagena argues that the ALJ did not attach an appropriately marked Exhibit List to his decision in violation of HALLEX 1-2-1-20, and that he failed to hold a supplemental hearing on the question of substance abuse in violation of HALLEX-I-2-6-80. The Third Circuit has stated clearly that "HALLEX provisions . . . lack the force of law and create no judicially enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (citing *Schweiker v. Hansen*, 450 U.S. 785 (1981)). In fact, Mr. Cartagena's own brief cites a Ninth Circuit opinion that reached the same conclusion. *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) ("HALLEX is a purely internal manual and as such has no legal force and is not binding.") (internal citations omitted). Since the manual is not binding, allegations of noncompliance should not be reviewed. *Id.* at 869 (citing *Western Radio Services Co. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996) ("we will not review allegations of noncompliance with an agency statement that is not binding on the agency.'"))

D. The ALJ's Decision to Ignore a Portion of the Vocational Expert's Testimony Was Not Erroneous.

Finally, Mr. Cartagena claims that the ALJ erroneously ignored portions of Vocation Expert ("VE") Rocco Meola's testimony, but this argument also fails.

In disability proceedings, it is typical for the ALJ to present a VE with hypothetical questions that ask whether, given certain assumptions about the claimant's capabilities, he or she can perform jobs that are available in the national

---

[3] "HALLEX" is an internal manual that conveys guiding principles, procedural guidance, and information to the Social Security Office of Hearings and Appeals Staff. *See* HALLEX 1-1-001.

7

economy. *See Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (reviewing use of VE testimony in disability proceedings). These hypothetical questions must accurately portray the nature or extent of the claimant's impairment as contained in the record. *See Wallace v. Sec'y of Health & Human Services*, 722 F.2d 1150, 1155 (3d Cir. 1983). *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Still, the ALJ is not required to submit to the VE every impairment alleged in the record, only those that have been credibly established. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. Instead . . . the hypotheticals posed must accurately portray the claimant's impairments.")

In Mr. Cartagena's case, the ALJ ignored one of the hypothetical questions he posed to the VE, but this was not erroneous because the question included an impairment that the ALJ deemed not credible. The second hypothetical differed from the first by adding that "the individual was limited in concentration and focus such that they would need to take unscheduled breaks of indeterminate length during the course of an eight hour day." (Tr. 75.) These additional impairments— "limited concentration and focus"—were not found credible, and an explanation for that finding was provided. (Tr. 20-21.) ("[a]fter careful consideration of the evidence . . . the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the above [RFC].") In making this credibility determination, the ALJ pointed to Mr. Cartagena's activities of daily living, and specifically to the report of State agency consultant Dr. Gash, who found that Mr. Cartagena could "psychiatrically maintain concentration, pace, and persistence." (Tr. 22, 273.) Since the second hypothetical only added impairments reasonably found to lack credibility based on the record, the ALJ did not err by disregarding it. *Rutherford* 399 F.3d 546 at 555 ("We hold that all of those [additional limitations] were reasonably discounted by the ALJ, so that the hypotheticals submitted to the vocational expert included all of the limitations credibly established by the record.")

**IV.   Conclusion**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

_____
WILLIAM J. MARTINI, U.S.D.J.

8